## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into amongst the United States of America, acting through the United States Department of Justice and on behalf the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively the "United States"); Habana Hospital Pharmacy, Inc., a Florida corporation; APB&J Holdings Corporation, a Florida corporation, d/b/a Medicine Shoppe #0089; Tropic Pharmacy Holdings, Inc., a Florida company; Longevity Drugs, LLC, a Florida limited liability company; and Forest Hill Pharmacy, LLC, a Florida limited liability company (collectively the "Settling Defendants"), and Beatriz Morales ("Relator")(hereafter collectively referred to as the "Parties"), through their authorized representatives.

## RECITALS

A.  The Settling Defendants were compounding pharmacies that billed federal healthcare programs for filling beneficiary prescriptions for compounded medicines.

B.  On July 18, 2017, Relator filed a *qui tam* action in the United States District Court for the Southern District of Florida captioned *United States, the State of Florida, ex rel. Beatriz Morales v. Habana Hospital Pharmacy, Inc. a Florida corporation, Longevity, LLC, a Florida limited liability company, Forest Hill Pharmacy, LLC, a Florida limited liability company, The Pharmacy Grid, LLC, a Florida limited liability company and G&K Pharmacy, LLC, a Vermont limited liability company*, Case No. 17-Civ-80854, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "First Civil Action").

C.  On November 17, 2017, Relator filed a *qui tam* action in the United States District Court for the Southern District of Florida captioned *United States, the State of Florida, ex rel. Beatriz Morales v. Habana Hospital Pharmacy, Inc. a Florida corporation, Longevity, LLC, a Florida limited liability company, Forest Hill Pharmacy, LLC, a Florida limited liability*

*company, The Pharmacy Grid, LLC, a Florida limited liability company, G&K Pharmacy, LLC, a Vermont limited liability company, Medicine Shoppe International, Inc., a Missouri company, Tropic Pharmacy Holdings, Inc., at Florida company, Kashmere Pharmacy, Inc., a Texas Company and Glades Drugs Inc., at Florida Company*, Case No. 17-Civ-80871, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Second Civil Action").

      D.     The First Civil Action and the Second Civil Action similarly alleged that defendants engaged in a scheme to fraudulently bill federal healthcare programs for invalid, unlawful, and medically unnecessary prescriptions and to pay illegal kickbacks. The First Civil Action was dismissed on July 18, 2018. The United States intervened in the Second Civil Action on April 14, 2022. The First Civil Action and the Second Civil Action hereinafter referred to as "the Civil Actions."

      E.     The United States contends that the Settling Defendants submitted or caused to be submitted claims for payment to: the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

      F.     The United States contends that it has certain civil claims against the Settling Defendants arising from the Settling Defendants' (1) use of Collaborative Practice Agreements that were unlawful pursuant to Florida law to delegate prescribing authority from a physician to a pharmacist, resulting in unlawful prescriptions and (2) using the same unlawful Collaborative Practice Agreements to write and fill unlawful prescriptions without any physician involvement during the period from January 1, 2014 through June 1, 2021. That conduct is referred to below as the "Covered Conduct."

      G.     On June 3, 2019, non-party Blue Sands, LLC ("Blue Sands"), acquired all outstanding shares of APB&J Corporation from APB&J Holdings Corporation. Notwithstanding

any term of this Settlement Agreement or any allegation in the Civil Actions to the contrary, the United States does not allege that Blue Sands, or its members or managers, engaged in, was aware of, condoned or allowed any Covered Conduct. Likewise, the United States is not aware of any facts tending to prove that any Covered Conduct occurred at or through or in relation to the Medicine Shoppe #0089 after Blue Sands purchased APB&J Corporation.

H. This Settlement Agreement is neither an admission of liability by the Settling Defendants nor a concession by the United States that its claims are not well founded.

I. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs. The Settling Defendants specifically reserve all defenses and rights to challenge any claim for the award of attorney's fees, expenses or costs to Relator, including any subsequent motion or litigation for a statutory award pursuant to 31 U.S.C. § 3730(d) or any law or provision. Nothing in this Agreement prohibits Relator from moving for a statutory fee award or prevents the Settling Defendants from contesting such an award, either in part or in full.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree, and covenant as follows:

TERMS AND CONDITIONS

1. Habana Hospital Pharmacy, Inc., Longevity Drugs, LLC, and Forest Hill Pharmacy, LLC, ("the Funding Defendants") shall pay the United States $830,707.19 (the "Settlement Amount"), of which $296,681.14 is restitution, no later than seven (7) business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written

3

instructions to be provided by the Office of the United States Attorney for the Southern District of Florida.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $166,141.44 to Relator by electronic funds transfer ("Relator's Share");

3. Subject to the exceptions in Paragraph 5 (concerning reserved claims), below, and upon the United States' receipt of the Settlement Amount, the United States releases the Settling Defendants including any parent, subsidiary or affiliated corporate entities from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 5, below, and upon the United States' receipt of the Settlement Amount, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases the Settling Defendants including any of their respective current and former officers, employees, agents, stockholders, shareholders, members, partners, and parent, subsidiary or affiliated corporate entities (and of their parent or affiliated entities' officers, employees, agents, stockholders, shareholders, and members, if any) from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 or and from any claim (other than a claim for reasonable attorney's fees, expenses and costs pursuant to 31 U.S.C. § 3730(d), which is specifically reserved by Relator) the Relator has made, or could have made, filed, asserted, pursued, maintained, claimed or alleged, including but not limited to all causes of actions, complaints, suits, demands, damages (including punitive or exemplary damages), liabilities, grievances, or

4

losses, whether know or unknown, asserted or unasserted, direct or consequential, suspected or unsuspected, in law or in equity, under any theory in contract, tort, statute, or otherwise of whatsoever nature or howsoever arising from the beginning of the world to the Effective Date of this Agreement.

5. Notwithstanding the releases given in Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory and permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals;

    g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h. Any liability for failure to deliver goods or services due;

    i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under

all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.

7. Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases the Settling Defendants, and their officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Actions, other than claims for reasonable expenses, attorney's fees and costs under 31 U.S.C. § 3730(d) which is specifically reserved.

8. The Settling Defendants waive and shall not assert any defense the Settling Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. The Settling Defendants fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the Settling Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

10. The Settling Defendants fully and finally releases the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the

6

Settling Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof other than defenses related to any Relator claim for expenses, attorney's fees and costs under 31 U.S.C. § 3730(d).

11. The Settlement Amount shall not be decreased because of the denial of claims for payment now being withheld from payment by any Medicare contractor or any state payor, related to the Covered Conduct; and the Settling Defendants agree not to resubmit to any Medicare contractor, Medicaid contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

12. The Settling Defendants agree to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the Settling Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

        (3) The Settling Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil [investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    (4)  the negotiation and performance of this Agreement; and

    (5)  the payment the Settling Defendants makes to the United States pursuant to this Agreement and any payments that the Settling Defendants may make to Relator, including costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

    b.  <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by the Settling Defendants, and the Settling Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by the Settling Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c.  <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: the Settling Defendants further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by the Settling Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. The Settling

Defendants agree that the United States, at a minimum, shall be entitled to recoup from the Settling Defendants any overpayment plus applicable interest and penalties because of the inclusion of such Unallowable Costs on previously submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by the Settling Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on the Settling Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

   d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the Settling Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

   13. The Settling Defendants agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, the Settling Defendants shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. The Settling Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that has been performed by another on its behalf.

14. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 (waiver for beneficiaries paragraph), below.

15. The Settling Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

16. Upon receipt of the payment described in Paragraph 1, above, the Relator and the United States shall promptly sign and file in the Second Civil Action a Joint Stipulation of Dismissal with prejudice of the Civil Action pursuant to Rule 41(a)(1).

17. Expect as otherwise stated herein, each Party shall bear its own legal and other costs incurred in connection with this mater, including the preparation and performance of this Agreement.

18. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Florida. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

21. The undersigned counsels represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on the Settling Defendants' successors, transferees, heirs, and assigns.

24. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

25. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 6/28/22    BY: _____
MATTHEW J. FEELEY
Assistant United States Attorney
Southern District of Florida

DATED: 06/02/2022    BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

**HABANA HOSPITAL PHARMACY, INC. a Florida corporation**

DATED: 6/13/22    BY: _____
Habana Hospital Pharmacy, Inc., a Florida corporation

DATED: 6/13/22    BY: _____
JEFFREY MARCUS
Marcus, Neiman, Rashbaum & Pineiro LLP
Counsel for Habana Hospital Pharmacy, Inc., a Florida corporation

**TROPIC PHARMAMCY, INC, a Florida corporation**

DATED: 4/22/22   BY: _____ Phillip Marks
Tropic Pharmacy Holdings, Inc. a Florida corporation

DATED: 6/23/22   BY: _____
THOMAS D. SOMMERVILLE
Law Offices of Thomas D. Sommerville, P.A.
Counsel for Tropic Pharmacy, a Florida corporation

**LONGEVITY DRUGS, LLC, a Florida limited liability company**

DATED: **06/07/22**        BY: _____
                                Longevity Drugs, LLC, a Florida limited liability company
                                Josh Green

**APB&J HOLDINGS CORPORATION, a Florida corporation**

DATED: **06/07/22**   BY: _____
APB&J Holdings Corp., a Florida corporation
Josh Green

**FOREST HILL PHARMACY, LLC, a Florida limited liability company**

DATED: **06/07/22**   BY: _____
Forest Hill Pharmacy, LLC, a Florida limited liability company
Josh Green

**BEATRIZ MORALES- RELATOR**

DATED: 6/8/22   BY: _____
                    Beatriz Morales

DATED: 6/6/22   BY: _____
                    NATALIE KHAWAN
                    The Whistleblower Law Firm, LLP

6 June 2022        _____
                    JAY WOLFSON
                    Jay Wolfson, Attorney & Counselor at Law

Counsels for Beatriz Morales